

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1069-10

### CHRISTOPHER ROBERT GEAR, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### ANGELINA COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, KEASLER and ALCALA, JJ., joined. COCHRAN, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined. MEYERS, J., dissented.

## O P I N I O N

Appellant was convicted in a bench trial of attempted burglary of a habitation.[1]  The court

of appeals decided that the evidence is legally insufficient to support appellant's conviction because

it would have been unreasonable for a fact finder to infer that appellant "intended to commit a

felony, theft, or an assault inside the house" when he attempted to enter the complainant's home

---

[1] *See* TEX. PENAL CODE § 15.01(a); TEX. PENAL CODE § 30.02(a)(1).

through a window that he had broken. *See Gear v. State*, No. 12-09-00226-CR, slip op. at 8 (Tex.App.–Tyler, delivered May 12, 2010) (not designated for publication).[2] We decide that a fact finder could reasonably infer that appellant intended to commit theft when he attempted to enter the complainant's home through the broken window.[3]

The complainant testified that, just after lunch on January 2, 2009, she was inside her home and heard a rattling noise from a side door that had been nailed shut. Soon after this, she heard three loud bangs. When she went into a bedroom to investigate, she came face to face with appellant as he was trying to enter her home through a broken window that was not broken before the complainant heard the noises and before her encounter with appellant. The complainant testified that appellant "looked startled like he didn't know [she] was there." Appellant said something like, "I didn't do it" and ran. The complainant testified:

Q. [STATE]: And you went in. And what happened next?

A. [COMPLAINANT]: I went in, and the window was busted. So I immediately ran over to the window. . . . I stepped out the window like this (indicating), and then this young man stepped in the window. I mean, like we were right here (indicating). We were right there. And I just–I panicked. I don't know. I said, "What are you doing?" or something. And he said something to the fact, "I didn't do it" or something.

---

[2]

The indictment in this case alleged that appellant did "with the specific intent to commit the offense of burglary of a habitation, do an act, to-wit: break a window, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, without the effective consent" of the complainant.

[3]

The ground upon which we granted discretionary review states:

The Court of Appeals erred in holding that the evidence presented at trial was legally insufficient to support the trier of fact's verdict of guilt. Specifically that the evidence was legally insufficient to show that the defendant's attempted entry into the habitation was done with the specific intent to commit theft, or an assault, or another felony offense.

Q. What did he do then?

A. He took off and I took off.  He took off this way, and I took off my way.

* * *

Q. Now, what was he doing when you first saw him?

A. When I was walking toward the window, I didn't see him.  When I got to the window and bent over to look out the window, he was jumping towards me.  That's how we met.  He was just–like he was prancing towards me, so–like he was jumping in.

* * *

Q. Okay.  Now, what were his actions when you saw him consistent with or what did that–

A. He just looked startled.  I mean, I–I just really–It happened really fast.  He looked startled like he didn't know I was there.  Well, we didn't expect to see each other.  I was startled because he was jumping towards me, and I guess he was startled because I was there.  Like I said, I just said, "What are you doing?"  And it kind of happened so fast.  He ran one way, and I ran the other way.  And I didn't see him anymore–

* * *

Q. What did he appear to be doing when–

A. I thought he was jumping in.  I thought he was–I thought he was jumping towards me.  I really thought he was jumping in.  That's what startled me.  That's what made me run.  I'm, like, you know, I didn't know–that was really scary, so. . .[4]

Appellant testified at trial that he did not attempt to break into the complainant's home and that he did not intend to steal anything or to harm anyone.  Appellant testified that he thought that the complainant's home was abandoned when he went to the back of the home to urinate.  He testified that he may have punched the complainant's home because he was agitated at himself for having just quit his roofing job with no transportation and only about a dollar in his pocket. According to appellant, he saw the complainant "through a hole in her window" asking him if he was

---

[4] Soon after this encounter with appellant, the complainant was brought to where the police had detained appellant, and appellant told the complainant that he had not been trying to break into her home.

trying to break into her home, which he denied. Appellant denied breaking the window and "rattling" the side door.[5]

Appellant, however, had previously stated to the police that he broke the complainant's window when he leaned on it. An investigator (Herrington) with the Angelina County Sheriff's Department testified in rebuttal:

> Q. [STATE]: But is it real clear to you that he said he leaned on the window and broke the window in?
>
> A. [HERRINGTON]: Yes, sir.
>
> Q. Did he ever tell you that he hit the house with his fist or anything like that?
>
> A. No, sir.

The court of appeals decided that "there is sufficient evidence to conclude that [appellant] was attempting to break into the house," but that "there is no evidence that allows any inference about what Appellant intended to do within the house," even though "a rational finder of fact could conclude that Appellant's intentions were not honorable." *Gear*, slip op. at 7. The court of appeals also decided that the "implausibility" of appellant's story "as to what he was doing that day at the [complainant's] house . . . does not lead to the conclusion, even in a light most favorable to the verdict, that he intended to commit some felony, to steal something, or to assault a person within the house." *Gear*, slip op. at 5. The court of appeals stated:

> We agree with the State that it appears, and the trial court believed, that Appellant was not being truthful as to what he was doing that day at the [complainant's] house. But while the implausibility of his story suggests that it is not true, it does not lead

---

[5] The court of appeals stated that appellant "testified that he broke out the window and made the noises that [the complainant] heard." *Gear*, slip op. at 4. The record, however, does not support this assertion. Appellant testified at trial that he did not break the window.

to the conclusion, even in a light most favorable to the verdict, that he intended to commit some felony, to steal something, or to assault a person within the house.

* * *

In this case, there is no reasonable inference to support the conclusion that Appellant intended to commit a felony, theft, or an assault within the house. Indeed, the State has not identified, either at trial or on appeal, what evidence supports the conclusion that Appellant intended to commit a felony, theft, or an assault within the house. It is reasonable to conclude that Appellant pushed at the nailed-shut door and broke the window because he was trying to get into the house. But among the various things he could have done inside, there is no evidence to support a conclusion that he intended to commit a felony, theft, or an assault.

* * *

There is the matter of Appellant's denials. He denied he was trying to break into the house. . . . But, as we have said, there is sufficient evidence to conclude that he was attempting to break into the house. His denial of being the person who broke the window is consistent with his intending to commit a felony, theft, or an assault within the house. But as with his flight, his unconvincing story allows the conclusion that it is not true but not that he intended to commit a felony, theft, or an assault within the house.

*Gear*, slip op. at 5-7.

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Cr.App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

The issue in this case is whether a fact finder may reasonably infer that appellant intended

to commit a felony, theft, or an assault inside the complainant's home when he attempted to enter the home through the window that he broke. This Court's decision in *Solis v. State*[6] is instructive. The evidence in *Solis* showed that the defendant removed a screen from a window of Alfred's habitation, took the screen to Pierce's habitation, and placed the screen in Pierce's front yard before Pierce interrupted him as he was attempting to enter Pierce's habitation. *Solis*, 589 S.W.2d at 445-47. Solis was charged with, and convicted of, attempted burglary of Alfred's habitation by attempting to enter Alfred's habitation with the intent to commit theft. *Id.*

This Court decided that the evidence, viewed in the light most favorable to the trial court's judgment, was insufficient to establish beyond a reasonable doubt the element of Solis's criminal intent to commit theft in Alfred's habitation. *Id.* This Court stated:

> The only circumstance relevant to proof of appellant's criminal intent is his removal of [Alfred's] screen. We agree with the State that this circumstance would have been more incriminating if appellant had been interrupted at the scene immediately after the removal of the screen. However, the State's own witnesses indicate that appellant, after removing the Alfred screen, did nothing further there, although he had not been interrupted or observed, and although a purse was in plain view only a few feet from the window. Instead, appellant took the [Alfred] screen to the Pierce home, placed it on the lawn near the Pierce front window, and attempted to enter the Pierce house before being interrupted by Mrs. Pierce. Appellant is charged with attempting burglary with intent to steal from the *Alfred* home, not the Pierce residence. We conclude that, although the circumstances show that appellant probably intended to enter the Alfred house with intent to commit theft, his behavior after removal of the screen was sufficiently inexplicable that reasonable doubt remains as to what his *specific* criminal intentions actually were.

*Solis*, 589 S.W.2d at 446-47 (emphasis in original).

Unlike the evidence relating to the charged offense in *Solis*, the evidence in this case shows that appellant was interrupted as he was attempting to enter the complainant's home immediately

---

[6] 589 S.W.2d 444 (Tex.Cr.App. 1979).

after he had broken the complainant's window, at which time he ran. We believe that *Solis* supports a decision that a fact finder could reasonably infer from these facts that appellant intended to commit theft. *See id*. ("Instead, [the defendant] took the [Alfred] screen to the Pierce home, placed it on the lawn near the Pierce front window, and **attempted to enter the Pierce house before being interrupted by Mrs. Pierce**. [The defendant] is charged with attempting burglary with intent to steal from the *Alfred* home, not the Pierce residence.") (emphasis in italics in original, emphasis in bold added).[7] In addition, this Court has recently recognized that a fact finder can consider a defendant's untruthful statement (in this case two "implausible" and inconsistent statements by appellant) as affirmative evidence of guilt. *See Padilla v. State*, 326 S.W.3d 195, 201 (Tex.Cr.App. 2010) (rational fact finder can consider a defendant's untruthful statements, in connection with the other circumstances of the case, as affirmative evidence of the defendant's guilt).

On this record, we decide that a fact finder could reasonably find beyond a reasonable doubt that the recently unemployed appellant with about one dollar in his pocket[8] intended to commit theft inside the complainant's home when he attempted to enter the home through the window that he had

---

[7] *See also In re J.O.T.*, No. 13-06-226-CV, 2007 Tex. App. LEXIS 5637, at *5, 7-8 (Tex. App.—Corpus Christi July 19, 2007, no pet.) (memorandum opinion not designated for publication). ("Here, J.O.T. was interrupted [after which he ran] while in the act of putting a knife into the residents' door jamb, making it impossible to know if he would have left the premises of his own accord. Furthermore, there was no evidence that [the defendant in *Solis*] made an attempt to open the [Alfred] window [after removing the screen], whereas J.O.T. was actually wiggling a knife between the doorjamb and the back door of the residents' home. Therefore, the evidence of guilt is more apparent than in *Solis*.") (citations to *Solis* omitted).

[8] We disagree with the court of appeals to the extent that it suggested that a reasonable fact finder could not consider appellant's lack of money as a circumstance relevant to his criminal intent. *See Gear*, slip op. at 7 n.6 ("Without more, the fact that [appellant] did not have much money in his pocket does not allow the inference that he intended to commit theft inside the house.").

just broken and where the evidence also shows that appellant ran when interrupted by the complainant and that appellant gave conflicting and implausible explanations for his actions. The cumulative force of all the incriminating circumstances is sufficient to support appellant's conviction for attempted burglary of a habitation. *See Hooper*, 214 S.W.3d at 13.[9]

---

[9]

We take note of some out-of-state cases that might support a decision that "entry [into a habitation] alone is not sufficient for a finding of intent for theft." *See, e.g., Commonwealth v. Wilamowski*, 633 A.2d 141, 142-44 (Pa. 1993) (and cases cited) (after discussing conflicting decisions "holding that entry alone is not sufficient for a finding of intent for theft" and decisions "holding an opposite conclusion," stating that "we will not accept a *per se* assumption in attempted burglary prosecutions that evidence of a forced opening into an occupied structure automatically gives rise to an acceptable inference of intent to commit a crime inside" and deciding that the evidence was insufficient to support an inference that the defendant possessed an intent to commit a crime inside a habitation where evidence showed that the defendant kicked a door, tore it off its hinges and then walked away); *Commonwealth v. Jacobs*, 372 A.2d 873, 874-76 (Pa. Super. Ct. 1977) (holding that "intentional entry into an occupied building is by *itself* insufficient to support an inference of an intent to steal" and deciding that evidence was insufficient to support inference of defendant's intent to steal where evidence showed that the defendant broke into an apartment and was immediately arrested by a police officer who was inside the apartment conducting a stakeout) (emphasis in original); *Gebhart v. State*, 531 N.E.2d 211, 212 (Ind. 1988) ("Most recently, this court considered the question raised here, namely the sufficiency of the evidence of intent to steal in an attempted burglary case, in *Slaton v. State* (1987), Ind., 510 N.E.2d 1343. Slaton, like appellant in this case, was scared off from a residence and fled, after having broken and having entered, but before manifesting the nature of his unlawful purpose. Slaton used a knife and coathanger, while appellant used a tire tool. Slaton, however, had entered and rummaged about in a car outside before breaking and entering into the residence. It was the evidence of that additional conduct in searching about in the car which brought the evidence of Slaton's intent to steal to the sufficiency level. There is no such additional measure of evidence here.").

It appears, however, that the majority rule, and one that is consistent with our decision in *Solis*, is that a "jury may infer the burglary defendant's intent to commit a crime from the fact that the defendant forcibly entered the home of another." *See* 13 Am.Jur.2d § 21 pages 237-38, § 44 pages 260-62 (2009); *Solis*, 589 S.W.2d at 446-47 (suggesting that intent to steal may be inferred from evidence that defendant attempted to enter a home before being interrupted by the homeowner); *State v. Spikes*, 961 A.2d 426, 436 (Conn. App. Ct. 2008), *appeal denied*, 967 A.2d. 114 (Conn. 2009), *cert. denied*, 130 S.Ct. 249 (2009) ("It is a basic principle of law that common sense is not to be left at the courtroom door" and "[e]vidence that a defendant attempted to enter a dwelling forcibly provides a reasonable basis for the jury to infer the intent to commit theft"); *Jacobs*, 372 A.2d at 877-79 (Price, J., dissenting) (discussing prior case law holding that "a jury could reasonably infer an intent to commit larceny when a defendant was caught in the act of breaking into an

Thus the judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.

Hervey, J.

Delivered: June 15, 2011
Publish

---

apartment" and noting that this "appears to be in accordance with the view of a majority of jurisdictions which have decided that an unexplained breaking and entering into a building is in itself sufficient to sustain a conviction for burglary with the intent to commit larceny" because, in the absence of evidence of other intent or explanation for breaking and entering, "the usual object or purpose . . . is theft") (citing 13 Am.Jur.2d § 52, p. 353 n.18 (1964)).

In any event, there is more evidence in this case than appellant's attempting to enter the complainant's home. There is the additional evidence of appellant's joblessness, his lack of transportation and funds, his "implausible" and inconsistent explanations for his conduct, and his flight upon being interrupted by the complainant.